**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**FORT WORTH DIVISION**

| | | |
|---|---|---|
| BILLY WASS, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| vs. | § | NO. 4:20-cv-00445-O-BP |
| | § | |
| AMERIGROUP TEXAS, INC., | § | |
| | § | |
| Defendant. | § | |
| | § | |

**<u>AMERIGROUP TEXAS, INC.'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT</u>**

# TABLE OF CONTENTS

**Page**

INTRODUCTION ................................................................................................. 1

BACKGROUND .................................................................................................. 2

    Procedural Background .................................................................................. 2

    Factual Background ....................................................................................... 2

ARGUMENTS AND AUTHORITY .................................................................... 4

    I.      APPLICABLE STANDARD ................................................................. 4

    II.    PLAINTIFF'S ENTIRE COMPLAINT IS AN IMPERMISSIBLE
            SHOTGUN PLEADING .......................................................................... 4

    III.   PLAINTIFF FAILS TO STATE A CLAIM UNDER THE TCPA ...................... 6

          A.     To the Extent Plaintiff Brings a Claim Under 47 U.S.C. § 227(c),
                 He Fails to State a Claim. .......................................................... 6

          B.     To the Extent Plaintiff Purports to Bring a Claim Under 47 U.S.C.
                 § 227(b), Plaintiff Fails to State a Claim. .................................. 8

          C.     To the Extent Plaintiff Alleges a TCPA Claim for Failure to
                 Include Opt-Out Language, He Fails to State a Claim. .......................... 10

               1.     Medicaid benefit calls cannot be telemarketing ........................... 12

    IV.   PLAINTIFF FAILS TO STATE A CLAIM UNDER TEXAS LAW ................ 14

          A.     Plaintiff Has Failed to Comply with the Pre-Suit Requirements of
                 TBCC § 304.257 ...................................................................... 15

          B.     Plaintiff Fails to State a Claim Under TBCC 304 .................................. 15

    V.    PLAINTIFF'S COMPLAINT SHOULD BE DISMISSED WITH
            PREJUDICE AS AMENDMENT IS FUTILE .................................................. 16

CONCLUSION ................................................................................................. 17

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009)........................................................................................................4, 5, 6

*Bailey v. Domino's Pizza, LLC*,
    867 F. Supp. 2d 835 (E.D. La. 2012)....................................................................................7

*Bell Atlantic Corp. v. Twombly*,
    550 U.S. 544 (2007)..............................................................................................................4

*Cunningham v. Politi*,
    No. 418CV00362ALMCAN, 2019 WL 2519568 (E.D. Tex. Apr. 30, 2019) ..........................8

*Cunningham v. Rapid Response Monitoring Servs., Inc.*,
    251 F. Supp. 3d 1187 (M.D. Tenn. 2017)..............................................................................8

*Deng v. Parker*,
    No. 2:18-CV-61, 2018 WL 4963290 (N.D. Tex. May 1, 2018), *amended*, No.
    2:18-CV-61, 2018 WL 6272460 (N.D. Tex. Oct. 22, 2018)....................................................16

*Dennis v. Amerigroup Washington, Inc.*,
    No. 3:19-CV-05165-RBL, 2020 WL 618472 (W.D. Wash. Feb. 10, 2020),
    *amended on denial of reconsideration*, No. 3:19-CV-05165-RBL, 2020 WL
    996856 (W.D. Wash. Mar. 2, 2020) ................................................................................3, 12

*Gloria Sun Jung v. Bank of Am., N.A.*,
    3:16-CV-00704, 2016 U.S. Dist. LEXIS 102247, 2016 WL 5929273 (M.D.
    Pa. Aug. 2, 2016) ..................................................................................................................7

*Hampton v. Barclays Bank Delaware*,
    No. 18-4071-DDC-ADM, 2019 WL 4256371 (D. Kan. Sept. 9, 2019) ..................................10

*Harold H. Huggins Realty, Inc. v. FNC, Inc.*,
    634 F.3d 787 (5th Cir. 2011) ................................................................................................5

*Heidarpour v. Empire Capital Funding Group, Inc.*,
    No. 18-CV-00250-YGR, 2018 U.S. Dist. LEXIS 120209, 2018 WL 3455809
    (N.D. Cal. July 18, 2018)......................................................................................................7

*Hill v. USAA Savings Bank*,
    No. CIV-18-803-SLP, 2019 WL 3082471 (W.D. Okla. July 15, 2019)..................................9

*Johansen v. Vivant, Inc.*,
    No. 12 C 7159, 2012 WL 6590551 (N.D. Ill. Dec. 18, 2002) ................................................10

ii

*Lowe v. Dallas Police Dep't*,
    No. 3:17-cv-704-G-BN, 2017 WL 4863076 (N.D. Tex. Oct. 17, 2017) ...................................5

*McCarrell v. Offers.com LLC*,
    No. 1:19-CV-00112-LY, 2019 WL 3220009 (W.D. Tex. July 16, 2019) ..............................16

*Mesa v. Am. Express Educ. Assurance Co.*,
    No. 16-CV-24447-HUCK, 2017 WL 2212147 (S.D. Fla. May 18, 2017) ..............................9

*Ransom v. Balido*,
    No. 3:15-CV-0979-D, 2015 WL 3408091 (N.D. Tex. May 27, 2015)...................................17

*In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*,
    CG Docket No. 02-278, 2003 FCC LEXIS 3673 (June 26, 2003) ........................................11

*In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*,
    CG Docket No. 02-278, 23 FCC Rcd 559 (2007)...................................................................11

*In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of*
    1991, CG Docket No. 02-278, 27 FCC Rcd 1830 (2012).......................................................11

*In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*,
    CG Docket No. 02-278, 30 FCC Rcd. 7961 (2015)...............................................................11

*S. Leasing Partners, Ltd. v. McMullan*,
    801 F.2d 783 (5th Cir. 1986) ................................................................................................5

*Weaver v. Wells Fargo Bank N.A.*,
    No. 8:15-cv-1247-T-23TGW, 2015 WL 4730572 (M.D. Fla. Aug. 10, 2015).........................9

*Williams v. Nat'l Healthcare Review*,
    No. 2:15-cv-0054-RFB-PAL, 2017 WL 4819097 (D. Nev. Oct. 24, 2017) ...........................12

*Ybarra v. Dish Network, LLC*,
    807 F.3d 635 (5th Cir. 2015) ................................................................................................9

**Statutes**

47 U.S.C. § 227 *et seq*............................................................................................. *passim*

Tex. Bus & Com. Code § 304 *et seq* ......................................................................... *passim*

Pursuant to Federal Rule of Civil Procedure 12(b)(6), Defendant Amerigroup Texas, Inc. ("Amerigroup") hereby files this Motion to Dismiss (the "Motion") Plaintiff's Complaint ("Compl.") against Plaintiff Billy Wass ("Plaintiff") for failure to state a claim.  In support thereof, Amerigroup respectfully states as follows:

## <u>INTRODUCTION</u>

While much could be said about Plaintiff's colorful Complaint [Dkt. 1-1] against Amerigroup, at bottom, only one thing matters: Plaintiff fails to state any plausible or possible allegations that give rise to the causes of action he tries to bring.  And although pro se parties are entitled to a certain degree of deference, the plain language of Plaintiff's Complaint evidences an intent more focused on besmirching an employee of Amerigroup than an intent to address alleged damages.  As will be discussed herein, Plaintiff's utter failure to articulate plausible factual allegations in support of discernable causes of action dooms his Complaint.

Moreover, Plaintiff appears determined to ignore those facts he does allege truthfully – facts that ultimately undermine any cause of action he tries to state.  For example, Plaintiff confirms that as soon as he sent a written complaint to Amerigroup, he received no further phone calls. Compl., p. 4.  Plaintiff further concedes that Amerigroup was neither trying to reach him, nor attempting to sell him a product. *Id.*  Instead, Plaintiff spends the majority of his Complaint providing extreme commentary on his conversations with Amerigroup employees and/or representatives.  Compl., *passim.*  Such allegations do not amount to a claim for which relief can be granted.  For these reasons, as well as those that will be discussed, at length, herein, Plaintiff has not (nor can he) plead a recognizable cause of action against Amerigroup.  Accordingly, Plaintiff's Complaint is ripe for dismissal.

## BACKGROUND

**Procedural Background**

On April 8, 2020, Plaintiff filed an "Original Petition for Relief" (the "Complaint") [Dkt. 1-1] against Defendant in the 271st Judicial District Court, Wise County, Texas, Case No. CV-8345.  Amerigroup timely removed the case to this Court on May 7, 2020, based on federal question and supplemental jurisdiction.  [Dkt. 1.]

In his Complaint, Plaintiff appears to allege that Amerigroup violated the Telephone Consumer Protection Act ("TCPA") by placing "robo-calls" to Plaintiff (Compl., p. 3) despite his telephone number being on the national and Texas do-not-call lists. Compl., p. 2. In the Complaint, Plaintiff alleges that Amerigroup is liable for "knowingly, willingly, and intentionally" calling and/or texting Plaintiff "in violation of Federal and State law," including requesting treble damages "under TCPA laws." Compl. p. 5.  Based on the cumulative allegations in the Complaint, Plaintiff also appears to be alleging violations of Texas Business and Commerce Code Chapter 304. *Id*.

**Factual Background**

Plaintiff bases his causes of action on five alleged calls that were placed to his cell phone. Compl., p. 3.  Plaintiff does not make any allegations regarding the dates or times of these calls. *Id*., *passim*.  Plaintiff also does not claim he revoked consent to be contacted on the first four calls.  *Id*.  Plaintiff claims that after the fourth call, he affirmatively attempted to call Amerigroup to be placed on a do-not-call list but was not able to do so during his first call to Amerigroup.  *Id*. After allegedly receiving a fifth call, Plaintiff alleges that he contacted a different phone number to attempt to be added to a do-not-call list.  Compl., p. 4.  Plaintiff also alleges that near this time, and after the fifth call, he sent a letter to Amerigroup's corporate headquarters "with [his] intent to file suit" and, after sending that letter, he did not receive any subsequent phone calls. *Id*.

After sending said letter, Plaintiff alleges that he was contacted by "multiple legal representatives" of Amerigroup who explained to him that Amerigroup was not attempting to solicit him due to the nature of Amerigroup's business model. *Id.*

Amerigroup, a managed care organization ("MCO"), administers Medicaid and Children's Health Insurance Program ("CHIP") benefits for certain residents of the state of Texas.[1]  Texas is divided into thirteen managed care service areas.[2]   Each area is served by managed care health plans that offer Texas Medicaid and CHIP programs. *Id.*  Amerigroup does not solicit members; rather individuals apply for Medicaid or CHIP benefits via the Texas Health and Human Services Commission, a state agency.[3]  Once a member is approved for Medicaid or CHIP benefits, they receive an enrollment packet in the mail wherein they choose a health plan. *Id.*  Alternatively, an enrollment broker chooses a health plan for them.[4]  *Id.*  Accordingly, Amerigroup does not solicit members and/or engage in telemarketing.  *See, e.g., Dennis v. Amerigroup Washington, Inc.*, No. 3:19-CV-05165-RBL, 2020 WL 618472, at *5 (W.D. Wash. Feb. 10, 2020), *amended on denial of reconsideration*, No. 3:19-CV-05165-RBL, 2020 WL

---

[1] https://www.myamerigroup.com/tx/home.html (last visited May 5, 2020).
[2] https://www.myamerigroup.com/tx/apply/know-your-service-area.html (last visited May 5, 2020).
[3] https://www.myamerigroup.com/tx/apply/enroll.html (last visited May 5, 2020).
[4] It is worth noting that Plaintiff vaguely alludes to the fact that he was told by an Amerigroup representative that Amerigroup received consent to contact his phone number.  Compl., p. 4 ("They also informed me that their friend in China knows a guy in Korea that is absolutely certain that the person from Canada has a signed permission from Frank in London that allows them to call me.").  This, of course, misstates the facts.  When an individual applies for Medicaid or CHIP, they provide their phone number to the state of Texas who then provides that member information to Amerigroup once Amerigroup is selected as the individual's MCO.  Although not at issue in this Motion, it is worth clarifying this point because Plaintiff vaguely, blatantly, and incorrectly references the same when, in fact, Amerigroup received consent to contact the phone number at issue via the state of Texas and the member who provided the telephone number at issue.

996856 (W.D. Wash. Mar. 2, 2020) ("Amerigroup cannot 'encourage[e] the purchase' of government benefits." (citing 47 C.F.R. § 64.1200(f)(12)).

## ARGUMENTS AND AUTHORITY

## I.   APPLICABLE STANDARD

Rule 8(a) requires that a pleading contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). To survive a Rule 12(b)(6) motion to dismiss, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). To satisfy plausibility, a plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The plausibility standard requires more than a sheer possibility that the defendant acted unlawfully, and the plaintiff's allegations "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. Although courts must presume that the plaintiff's factual allegations are true, "legal conclusion[s] couched as . . . as factual allegation[s]" are not given such deference; a plaintiff must provide the grounds of his entitlement to relief beyond mere "labels and conclusions." *See id.*

## II.   PLAINTIFF'S ENTIRE COMPLAINT IS AN IMPERMISSIBLE SHOTGUN PLEADING

As a general matter, "[a] pleading that states a claim for relief must contain ... a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). When a complaint falls short of this directive, a defendant may move to dismiss the claim for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). In considering the interplay between Rule 8 and Rule 12, the United States Supreme Court has explained:

> To survive a motion to dismiss [for failure to state a claim], a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief.

*Iqbal*, 556 U.S. at 678 (internal citations and punctuation omitted) (citing. *Twombly*, 550 U.S. at 555–58). Under this standard, a "court must accept all well-pleaded facts as true and view those facts in the light most favorable to the plaintiff." *Harold H. Huggins Realty, Inc. v. FNC, Inc.*, 634 F.3d 787, 803 n. 44 (5th Cir. 2011) (citation, internal quotation marks, and punctuation omitted).

Such pleadings are subject to dismissal under Rule 12(b)(6), *see id*., particularly where, like here, "the pleader heedlessly throws a little bit of everything into his complaint in the hopes that something will stick," *S. Leasing Partners, Ltd. v. McMullan*, 801 F.2d 783, 788 (5th Cir. 1986), because asserting claims in this manner—that is, "by merely attaching a label and/or legal conclusion to no facts unique to that claim—or, at best, threadbare unique facts—is not sufficient to state a claim that is plausible on its face," *Lowe v. Dallas Police Dep't*, No. 3:17-cv-704-G-BN, 2017 WL 4863076, at *9 (N.D. Tex. Oct. 17, 2017), *rec. adopted*, 2017 WL 4838980 (N.D. Tex. Oct. 26, 2017).  "Put another way, these claims as alleged each lack sufficient facts to support an inference that [the] defendant is responsible for a particular harm to [the plaintiff]—therefore there is no 'more than the mere possibility of misconduct,' which, of course, is not enough to state a plausible claim." *Id*. (quoting *Iqbal*, 556 U.S. at 679, 129 S.Ct. 1937; citing *Robbins v. State of Okla. ex rel Dep't of Human Servs.*, 519 F.3d 1242, 1247 (10th Cir. 2008) ("The burden is on the plaintiff to frame a 'complaint with enough factual matter (taken as true)

to suggest' that he or she is entitled to relief." (quoting *Twombly*, 550 U.S. at 556, 127 S.Ct. 1955))).

Here, once stripped of Plaintiff's unnecessary *ad hominem* attacks and other "color" commentary, Plaintiff's Complaint is wholly devoid of any of the necessary "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Even giving pro se Plaintiff the most deferential of readings, Plaintiff's Complaint quintessentially contains only "facts that are merely consistent with a defendant's liability" and therefore "stops short of the line between possibility and plausibility of entitlement to relief." *Iqbal*, 556 U.S. at 678.  Plaintiff's Complaint is ripe for dismissal solely on these grounds.

## III.    PLAINTIFF FAILS TO STATE A CLAIM UNDER THE TCPA

### A.    To the Extent Plaintiff Brings a Claim Under 47 U.S.C. § 227(c), He Fails to State a Claim.

Section 227(c)(5) of the TCPA allows a private right of action for "a person who has received more than one telephone call within any 12-month period by or on behalf of the same entity" in violation of the prescribed regulations requiring telemarketing entities to establish internal do-not-call lists and policies and procedures for implementing the same. 47 U.S.C. § 227(c)(5). 47 C.F.R. § 64.1200(d) states that "[n]o person or entity shall initiate any call for telemarketing purposes to a residential telephone subscriber unless such person or entity has instituted procedures for maintaining a list of persons who request not to receive telemarketing calls made by or on behalf of that person or entity." 47 C.F.R. § 64.1200(d).

In the instant case, Plaintiff has not adequately pleaded his TCPA claim under § 227(c)(5) against Amerigroup.  Plaintiff's allegations provide no detail whatsoever as to the nature or extent of these violations of 47 U.S.C. § 227(c)(5) and/or 47 C.F.R. § 64.1200(d).  Compl., *passim*.  "[Section 227(c)] relates to a ***marketer's*** duty to prepare internal policies to receive and

implement affirmative requests not to receive calls; Plaintiff does not allege that he made any such affirmative request to [the] Defendant[s], and therefore it is not clear how the provision was violated." *See Bailey v. Domino's Pizza, LLC*, 867 F. Supp. 2d 835, 842 (E.D. La. 2012) (emphasis added) (court granted defendant's motion to dismiss plaintiff's claim because he did not allege that he made an affirmative request to not receive calls).

Here, Plaintiff's allegations, taken as true, confirm that he only attempted to be placed on Amerigroup's do-not-call list after the fourth call made to him. Compl., p. 3. After that fourth call, Plaintiff was ultimately placed on the do-not-call list after he sent a letter to Amerigroup regarding the calls. Compl., p. 4 ("This resulted, at least, in an end to the phone calls."). Moreover, Plaintiff's own allegations confirm that Amerigroup was not trying to solicit him. *Id.* Accordingly, Plaintiff's allegations fail to state a claim for relief under § 227(c). *See Gloria Sun Jung v. Bank of Am., N.A.*, 3:16-CV-00704, 2016 U.S. Dist. LEXIS 102247, 2016 WL 5929273, at *9 (M.D. Pa. Aug. 2, 2016) (court dismissed Plaintiff's claim under § 227(c)(5) because "Plaintiff offers no facts plausibly demonstrating that… Defendants violated the FCC's prescribed regulations for protecting the privacy of residential telephone subscribers."); *see also Heidarpour v. Empire Capital Funding Group, Inc.*, No. 18-CV-00250-YGR, 2018 U.S. Dist. LEXIS 120209, 2018 WL 3455809, at *2 (N.D. Cal. July 18, 2018) (denying motion for default judgment for claims under § 227(c)(5) where "with respect to the liability and damages allegations, plaintiffs do not specifically allege facts, or provide supporting evidence, to establish when and how anyone requested that the phone numbers at issue be placed on the National Do Not Call Registry"). As Plaintiff has failed to clearly articulate the requisite factual allegations regarding Amerigroup's alleged violations of the § 227(c) (including sufficiently alleging that

Amerigroup was a telemarketer as defined by the statute), Plaintiff is not entitled to relief under § 227(c)(5).

Moreover, Plaintiff plainly cannot state a claim under §227(c) because Plaintiff appears to allege that the calls were to his cell phone. *See* Compl. at p. 3 (claiming that he received the first and second calls in his truck and then his car, respectively). The specific language of the TCPA provides that the regulations implemented pursuant to Subsection 227(c) apply only to telephone solicitations made to "***residential telephone subscribers***." 47 U.S.C. § 227(c)(1) (emphasis added). Further, the plain language of the regulation relied upon by Plaintiff states:

> No person or entity shall initiate any call for telemarketing purposes to a residential telephone subscriber unless such person or entity has instituted procedures for maintaining a list of persons who request not to receive telemarketing calls made by or on behalf of that person or entity.

47 C.F.R. § 64.1200(d).  The private right of action created by 47 U.S.C. § 227(c)(5) is accordingly limited to redress for violations of the regulations that concern ***residential*** telephone subscribers.  Plaintiff alleges only calls to his cellular phone.  Accordingly, he fails to state a claim for relief under 47 U.S.C. § 227(c)(5).  *See Cunningham v. Rapid Response Monitoring Servs., Inc.*, 251 F. Supp. 3d 1187, 1210 (M.D. Tenn. 2017) (dismissing similar claim).

**B.     To the Extent Plaintiff Purports to Bring a Claim Under 47 U.S.C. § 227(b), Plaintiff Fails to State a Claim.**

"Section 227(b) of the TCPA makes it unlawful for any person 'to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system or an artificial or prerecorded voice... to any telephone number assigned to a... cellular telephone… without the prior express consent of the called party.'" *Cunningham v. Politi*, No. 418CV00362ALMCAN, 2019 WL 2519568, at *5 (E.D. Tex. Apr. 30, 2019), *report and recommendation adopted*, No. 4:18-CV-362, 2019 WL 2524736 (E.D. Tex. June 19, 2019) (quoting *Cunningham v. TechStorm, LLC*, No. 3:16-cv-2879-

- 8 -

S-BH, 2018 WL 3118400, at *3 (N.D. Tex. May 29, 2018) *report and recommendation adopted*, 3:16-CV-2879-S-BH, 2018 WL 3117529 (N.D. Tex. June 25, 2018) (quoting 47 U.S.C. § 227(b)(1)(A)(iii), (B)).

"T[o] state a claim under the TCPA for calls made to a cellular phone, a plaintiff is required to allege that a call was made to a cell or wireless phone by the use of any automatic dialing system or an artificial or prerecorded voice and without prior express consent of the called party." *Id.* (citing 47 U.S.C. § 227(b)(1)(A); *see also Chambers v. Green Tree Servicing LLC*, No. 3:15-CV-1879-M-BN, 2017 WL 2693565, at *1 (N.D. Tex. June 20, 2017)). The Fifth Circuit has stated that "[t]o be liable under the 'artificial or prerecorded voice' section of the TCPA ... a defendant must make a call and an artificial or prerecorded voice must actually play." *Ybarra v. Dish Network, LLC*, 807 F.3d 635, 640 (5th Cir. 2015). Furthermore, an automatic telephone dialing system is defined as equipment with the capacity "(A) to store or produce telephone numbers to be called, using a random or sequential number generator; and (B) to dial such numbers." 47 U.S.C. § 227(a)(1).

Plaintiff's Complaint contains no facts capable of supporting a plausible finding or inference that Amerigroup used equipment with the capacity "to store or produce telephone numbers to be called, using a random or sequential number generator" or sufficient facts to support that Amerigroup utilized a "pre-recorded message" as the statute requires. 47 U.S.C. § 227(a)(1)(A). Many courts have held that "a bare allegation that [d]efendant used an ATDS is not enough" to state a TCPA claim sufficient to survive Rule 12(b)(6) dismissal. *Hill v. USAA Savings Bank*, No. CIV-18-803-SLP, 2019 WL 3082471, at *5 (W.D. Okla. July 15, 2019); *see also Mesa v. Am. Express Educ. Assurance Co.*, No. 16-CV-24447-HUCK, 2017 WL 2212147, at *5 (S.D. Fla. May 18, 2017); *Weaver v. Wells Fargo Bank N.A.*, No. 8:15-cv-1247-T-23TGW,

2015 WL 4730572, at *3 (M.D. Fla. Aug. 10, 2015); *Johansen v. Vivant, Inc.*, No. 12 C 7159, 2012 WL 6590551, at *3 (N.D. Ill. Dec. 18, 2002). "Instead, courts have held that, to state a plausible TCPA claim, a plaintiff must explain the circumstances suggesting defendant used an ATDS." *Hampton v. Barclays Bank Delaware*, No. 18-4071-DDC-ADM, 2019 WL 4256371, at *5 (D. Kan. Sept. 9, 2019).

The Complaint asserts that Plaintiff received five calls from Amerigroup, however, it fails to include any further pertinent information regarding the date or time of these calls. Compl., p. 3. The Complaint makes only the conclusory allegation that Amerigroup used a "fully automated calling device" when it made these calls, if Plaintiff describes the calls at all. *Id.*, p. 3-4 (stating "on Sunday, I got another phone call as well" but providing no further information). Also, the Complaint alleges that Plaintiff "hung up the moment [the first call] started its pre-recorded message" and that, during the third call "[t]he recording was information promotions concerning insurance." *Id.* However, these allegations, at most, are legal conclusions not entitled to deference by this Court. "Although these allegations provide some detail about the calls, the alleged facts fail to explain the circumstances surrounding the calls sufficient to support a plausible inference that defendant called plaintiff's cellular telephone using an ATDS." *Hampton*, No. 18-4071-DDC-ADM, 2019 WL 4256371, at *6. Accordingly, to the extent the Court construes Plaintiff is alleging a claim under § 227(b), Plaintiff's claim should be dismissed for his failure to state a claim.

### C.      To the Extent Plaintiff Alleges a TCPA Claim for Failure to Include Opt-Out Language, He Fails to State a Claim.

Plaintiff also appears to allege that Amerigroup is in violation of the TCPA by failing to include opt-out language. Compl., p. 4 ("Defendant failed…to provide a way to have my number removed from their system."). Preliminarily, there is no requirement under the plain language of

the TCPA that calls to cell and residential phones include opt-out language.  *See* 47 U.S.C. §

227.  Moreover, where the FCC's implementing regulations have required that entities include an

opt-out mechanism, it has typically only done so where the calls at issue involve telemarketing.

Indeed, the TCPA was enacted by Congress in 1991 to combat relentless telemarketers.  Under

the TCPA, an "unsolicited advertisement" means "any material advertising the commercial

availability or quality of any … goods[] or services which is transmitted to any person." 42

U.S.C. § 227(a)(5).  The Code of Federal Regulations also defines "advertisement" as "any

material advertising the commercial availability or quality of any … goods[] or services," 47

C.F.R. § 64.1200(f)(1), and defines "telemarketing" as "the initiation of a telephone call or

message for the purpose of encouraging the purchase … of … goods[] or services." 47 C.F.R. §

64.1200(f)(12).  Indeed, the FCC has issued a series of orders and rulings prescribing regulations

in furtherance of the Act. *See, e.g.*, *In the Matter of Rules & Regulations Implementing the Tel.*

*Consumer Prot. Act of 1991*, CG Docket No. 02-278, 2003 FCC LEXIS 3673 (June 26, 2003); *In*

*the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, CG

Docket No. 02-278, 23 FCC Rcd 559 (2007) (hereinafter "2008 Order"); *In the Matter of Rules*

*& Regulations Implementing the Tel. Consumer Prot. Act of* 1991, CG Docket No. 02-278, 27

FCC Rcd 1830 (2012) (hereinafter "2012 Order"); *In the Matter of Rules & Regulations*

*Implementing the Tel. Consumer Prot. Act of 1991*, CG Docket No. 02-278, 30 FCC Rcd. 7961

(2015) (hereinafter "2015 Order").

　　The FCC has made clear what constitutes telemarketing.  Specifically, in its 2012 Order,

the FCC noted that "an exemption would promote important communications by health care

providers and health insurance plans with patients such as prescription refills and immunization

reminders and that these communications promote health and streamline health care

administration."  FCC 2012 Order, ¶ 63, n. 192.  Based, in part, on this logic, the FCC held that

> In the FTC's TSR proceeding, concern was raised, in relevant part, whether immunization reminders, health screening reminders, medical supply renewal requests, and generic drug migration recommendations would constitute inducements to purchase goods or services. In our proceeding, one commenter argues that a call "pushing" flu vaccines would be illegal under the TCPA…. Under the second prong of the TCPA exemption provision, which requires that such calls not include an unsolicited advertisement, we find the calls at issue here are *intended to communicate health care-related information rather than to offer property, goods, or services and conclude that such calls are not unsolicited advertisements*.

*Id*., ¶ 63 (emphasis added).

Accordingly, Plaintiff's own allegations do not support that the calls at issue were solicitations or advertisements under the TCPA, instead alleging that the calls at issue were "informational promotions concerning insurance of some type." Compl., p. 4.   Moreover, Plaintiff admits that in his prior communications with Amerigroup regarding these calls, he had been told that "they were not really trying to sell 'me' something."  Compl., p. 5.   Nor could Amerigroup do so – as has recently been confirmed by the Western District of Washington, MCOs such as Amerigroup "cannot 'encourage[e] the purchase' of government benefits." *Dennis*, No. 3:19-CV-05165-RBL, 2020 WL 618472, at *5 (citing the federal regulations governing managed care organizations 47 C.F.R. § 64.1200(f)(12)).

### 1.    Medicaid benefit calls cannot be telemarketing.

First and foremost, any calls made by Amerigroup relate to Medicaid benefits and therefore cannot constitute advertisements or telemarketing. *Dennis*, No. 3:19-CV-05165-RBL, 2020 WL 618472, at *5; *Williams v. Nat'l Healthcare Review*, No. 2:15-cv-0054-RFB-PAL, 2017 WL 4819097, at *7 (D. Nev. Oct. 24, 2017) (ruling that calls regarding Medicaid and/or charitable health coverage do not constitute "advertising the commercial availability" of any good or service because Medicaid is not a "commercially available" program under the plain

meaning of that phrase, as it is used to define "advertising.").  Common sense therefore dictates

that Amerigroup's calls were not advertisements or telemarketing, but rather were, at the very

least, health care calls subject to the health care exemption found in 47 CFR § 64.1200(a)(2).  As

illustrated by the Plaintiff's own allegations, the calls at issue are akin to the call that the court in

*Smith v. Blue Shield* held was "purely informational." 228 F. Supp. 3d 1056 (C.D. Cal. 2017).  In

*Smith*, the plaintiff brought suit against a defendant health benefit plan, Blue Shield of

California, arguing that calls to her cell phone constituted telemarketing, which was prohibited

by the TCPA.  The final script of the call in *Smith* read:

> This is an important message from Blue Shield of California. It's time to review
> your 2016 health plan options and see what's new. Earlier this month, we mailed
> you information about your 2016 plan and benefit changes. It compares your
> current health plan to other options from Blue Shield. You can also find out more
> online at blueshieldca.com. If you have not received your information packet in
> the mail, or if you have any questions, please call the number on the back of your
> member ID card. Thank you. Goodbye.

*Id.* at 1058-1059.  The *Smith* Court determined that the telephone call was informational, holding

that the call "notified recipients that they should have received information about changes to

their insurance plan, encouraged them to seek out information about their plan by examining the

information packet and visiting Blue Shield's website, and directed them to call the member

service number (as opposed to a sales department) to resolve any questions or issues." *Id.* at

1066.  In reaching this conclusion, the *Smith* court noted that the call comported with CMS

guidelines.  *Id.*  Here, like in *Smith*, federal regulations that apply to all Medicaid managed care

programs (like Amerigroup) require the program to provide various informational notices to

members and potential enrollees.

Likewise, in *Savett v. Anthem, Inc.*, another court held that calls placed for a health care

purpose that did not encourage the purchase of services were not telemarketing. No. 1:18-CV-

274, 2019 WL 5696973, at *5 (N.D. Ohio Nov. 4, 2019).  In *Savett*, the plaintiff alleged TCPA

- 13 -

violations relating to calls Anthem placed to his residential landline using a telephone number that had been reassigned from Anthem's member to the plaintiff. *Id*. at *1-4. The plaintiff argued that the calls were subject to the TCPA because they "telemarketed" commercial activity by encouraging the caller to obtain a flu shot from an Anthem provider or sign up for telehealth services provided by Anthem. *Id*. at *5. The court disagreed—ruling that all of Anthem's calls fell under the non-telemarketing exemption. *Id*. The *Savett* Court noted that the calls, which were intended for Anthem's member were "purely informational" because they described services that Anthem's member had already paid for and did not otherwise feature "products for purchase," even when received by a reassigned number recipient. The *Savett* Court reiterated the rulings in other district courts which held that calls placed for information gathering purposes are exempt from the TCPA. *Id*. at * 5-6 (citing *Williams*, 2017 WL 4819097, and *Robert W. Mauthe, M.D., P.C.  v. Optum Inc.*, 925 F.3d 129 (3d Cir. 2019)).

Accordingly, to the extent that the Court construes Plaintiff's Complaint as containing a claim relating to Amerigroup's alleged failure to include an opt-out mechanism in its calls, such a claim fails as Amerigroup does not engage in the requisite telemarketing required to have said opt-out language. Plaintiff's TCPA claim(s) must be dismissed.

## IV.    PLAINTIFF FAILS TO STATE A CLAIM UNDER TEXAS LAW

Plaintiff also vaguely alleges that Amerigroup violated "Texas Business and Commerce Code Chapter 304" (hereinafter "TBCC 304"). Compl., p. 2. Like Plaintiff's shotgun TCPA claim, it is unclear what express portions of TBCC 304 Amerigroup is accused of violating, but Plaintiff generally references TBCC 304 in conjunction with his references to do-not-call lists. *Id*., p. 3-4. However, Plaintiff's Complaint cannot withstand 12(b)(6) scrutiny. First, he has failed to adhere to the procedural pre-suit requirements of TBCC 304. This failure alone dooms

his Complaint.  Second, Plaintiff fails to sufficiently state a claim so as to provide Amerigroup the requisite notice of what it allegedly did wrong.

> **A.     Plaintiff Has Failed to Comply with the Pre-Suit Requirements of TBCC §**
> **304.257.**

While Plaintiff appears to have attempted to comport with the pre-suit requirements of § 304.257 (*see* Compl., p. 5), Plaintiff has failed to do so sufficient to state a claim for relief. Indeed, TBCC § 304.257 states that a "consumer may bring a civil action based on the second or a subsequent violation of Subchapter B1 if:

> (1) the consumer has notified the telemarketer of the alleged violation;
>
> (2) not later than the 30th day after the date of the call, the consumer files with the commission, the attorney general, or a state agency that licenses the person making the call a verified complaint stating the relevant facts surrounding the violation; *and*
>
> (3) the commission, attorney general, or state agency receiving the complaint does not initiate an administrative action or a civil enforcement action, as appropriate, against the telemarketer named in the complaint before the 121st day after the date the complaint is filed.

Tex. Bus & Com. Code § 304.257 (emphasis added). Plaintiff fails to allege (1) that he *specifically* notified Amerigroup of the alleged violated of TBCC 304 or (2) that he filed a complaint with the appropriate entity "not later than the 30th day after the date of the call." Compl., *passim*.  Accordingly, Plaintiff has failed to adhere with the pre-suit requirements outlined in TBCC 304 and his TBCC claim should be dismissed.

> **B.     Plaintiff Fails to State a Claim Under TBCC 304.**

Preliminarily, Amerigroup asserts that Plaintiff wholly fails to articulate a cognizable claim under the Texas Code against Amerigroup.  On this basis alone, Plaintiff's Complaint is ripe for dismissal as any claim under the Texas Code is barely (if at all) discernable on its face.

To the extent the Court generously construes Plaintiff's Complaint as properly bringing a claim under TBCC 304, Plaintiff still fails to state the requisite elements of the claim or provide sufficient factual allegations in support thereof.  Section 304.052 states that a "telemarketer may not make a telemarketing call to a telephone number published on that no-call list more than 60 days after the date the telephone number appears on the current list." Tex. Bus & Com. Code § 304.052. The Code defines "telemarketing call" as an "unsolicited telephone call" made to solicit a sale of a consumer good or service, solicit an extension of credit for a consumer good or service, or obtain information that may be used to solicit a sale of a consumer good or service or to extend credit for the sale. *Id*. at § 304.002(9). However, as discussed above, Plaintiff does not adequately plead that the calls at issue were made to solicit a sale of a consumer good or service; instead, Plaintiff's own allegations tacitly admit that the calls at issue were made by a Medicaid MCO attempting to contact its member.  *See* Compl., p. 4-5.  Accordingly, Plaintiff has failed to state a claim under TBCC 304.  *See, e.g., McCarrell v. Offers.com LLC*, No. 1:19-CV-00112-LY, 2019 WL 3220009, at *5 (W.D. Tex. July 16, 2019), *report and recommendation adopted*, No. 1:19-CV-000112-LY, 2019 WL 6048012 (W.D. Tex. Aug. 20, 2019).

## V.      PLAINTIFF'S COMPLAINT SHOULD BE DISMISSED WITH PREJUDICE AS AMENDMENT IS FUTILE

For all the reasons discussed above and based on those facts that Plaintiff does credibly allege, even if he is granted leave to amend, Plaintiff still would not be able to state a plausible claim for relief.   Accordingly, Plaintiff should not be given leave to amend as amendment would be futile. While "[p]ro se plaintiffs are afforded significant latitude in presenting their claims to the courts, as they are held to a lower standard in their filings;… even if this Court were to allow plaintiff time to amend his complaint, the facts alleged therein are delusional and it would be futile to attempt to amend the claims." *Deng v. Parker*, No. 2:18-CV-61, 2018 WL 4963290, at

- 16 -

*1 (N.D. Tex. May 1, 2018), *amended*, No. 2:18-CV-61, 2018 WL 6272460 (N.D. Tex. Oct. 22, 2018), *report and recommendation adopted*, No. 2:18-CV-061-D, 2018 WL 6270977 (N.D. Tex. Nov. 29, 2018), *appeal dismissed*, 799 F. App'x 301 (5th Cir. 2020) (citing *Jones v. Greninger*, 188 F.3d 322, 326 (5th Cir. 1999) (holding that a pro se complaint can be dismissed without providing the plaintiff the opportunity to amend if such amendment would prove futile)); *see also Ransom v. Balido*, No. 3:15-CV-0979-D, 2015 WL 3408091, at *2 (N.D. Tex. May 27, 2015) ("Here, Plaintiff's claims are fatally infirm. Thus, the Court concludes that granting leave to amend would be futile and cause needless delay.") (citing *Brewster v. Dretke*, 587 F.3d 764, 767–68 (5th Cir. 2009) (while generally, "a pro se litigant should be offered an opportunity to amend his complaint before it is dismissed," leave to amend is not required where plaintiff "has already pleaded his 'best case.'")).

Ultimately, Amerigroup is an MCO that provides Medicaid and CHIP services to vulnerable populations across Texas.  It does not engage in telemarketing per the rules and regulations that govern Medicaid.  *See* 47 C.F.R. § 64.1200(f)(12).  Plaintiff received the calls at issue on his cell phone and not his residential line.  Accordingly, Plaintiff cannot and will not be able to state a TCPA or TBCC 304 claim against Amerigroup; Plaintiff's Complaint should be dismissed with prejudice.

## <u>CONCLUSION</u>

For the foregoing reasons, Amerigroup respectfully requests that the Court dismiss Plaintiff's Complaint with prejudice pursuant Federal Rule of Civil Procedure 12(b)(6) and grant such other relief it deems appropriate.

Dated:        May 14, 2020                    Respectfully submitted,


                                              */s/ Virginia Bell Flynn*
                                              Virginia Bell Flynn, Bar No. 24101258
                                              TROUTMAN SANDERS LLP
                                              4320 Fairfax Avenue
                                              Dallas, Texas 75205
                                              Telephone: (804) 697-1480
                                              Facsimile: (804) 698-5109
                                              E-Mail: virginia.flynn@troutman.com

                                              ATTORNEYS FOR DEFENDANT
                                              AMERIGROUP TEXAS, INC.

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on May 14, 2020, a copy of the foregoing was filed electronically via

the Court's CM/ECF System and was served by overnight and electronic mail on the following:

Billy Wass (Bill Wass)
1163 County Road 2610
Krum, TX 76249

Pro Se Plaintiff

*/s/ Virginia Bell Flynn*
Virginia Bell Flynn, Bar No. 24101258
TROUTMAN SANDERS LLP
4320 Fairfax Avenue
Dallas, Texas 75205
Telephone: (804) 697-1480
Facsimile: (804) 698-5109
E-Mail:  virginia.flynn@troutman.com

ATTORNEYS FOR DEFENDANT
AMERIGROUP TEXAS, INC.

- 19 -